IN THE MATTER OF: T.M., A MINOR CHILD

No. COA06-1271

(Filed 17 April 2007)

**1. Termination of Parental Rights— standing—nonsecure custody orders**

The trial court did not err by concluding that DSS had standing to file the petition to terminate respondents' parental rights even though respondents contend that nonsecure custody orders are temporary and do not grant legal custody sufficient to confer standing, because: (1) N.C.G.S. § 7B-1103(a)(3) does not limit standing to parties granted custody by an order entered under N.C.G.S. § 7B-905; (2) the plain language of N.C.G.S. § 7B-1103(a)(3) only requires that DSS be granted custody by a court of competent jurisdiction; and (3) the nonsecure custody order entered on 19 December 2005 was sufficient to confer standing to DSS.

**2. Termination of Parental Rights— jurisdiction—failure to include order granting custody of minor child to DSS**

The trial court did not err in a termination of parental rights case by exercising jurisdiction even though respondents contend the petition was defective in that an order granting custody of the minor child to DSS was not attached, because: (1) absent a showing of prejudice, failure to comply with N.C.G.S. § 7B-1104(5) does not deprive the trial court of subject matter jurisdiction; (2) respondent mother failed to cite any prejudice due to DSS's

**IN RE T.M.**

[182 N.C. App. 566 (2007)]

technical error, and none is apparent in the record; (3) there was no indication that respondent was unaware of the minor child's placement at any point during the case; (4) respondent mother has been represented by counsel throughout much of the process, and respondent was present at many of the hearings at which custody of the minor child was granted to and then continued with DSS; (5) respondent father failed to establish prejudice from the failure to attach the custody order, although he did not appear at the hearings, since the knowledge of his attorney was imputed to him; and (6) although respondent father was not represented by counsel at the time the petition for termination of his rights was filed on 28 December 2005, this fact does not resolve the issue when the issue is whether he was prejudiced based on the failure to attach the custody order, thus making him unaware of his child's placement with DSS, instead of whether he was adequately represented on the date the petition was filed.

**3. Termination of Parental Rights— subject matter jurisdiction—failure to show prejudice based on filing and hearing delays**

Respondent father failed to establish that he was prejudiced by the failure of DSS to file the termination of parental rights action within sixty days of the permanency planning hearing, and by the trial courts holding the hearing outside the statutorily mandated limit of ninety days from filing of the petition.

**4. Termination of Parental Rights— willfully leaving child in foster care for more than twelve months without showing reasonable progress—clear, cogent, and convincing evidence**

The trial court did not err by finding that there were grounds to support the termination of respondent mother's parental rights including under N.C.G.S. § 7B-1111(a)(2) that she willfully left her child in foster care for more than twelve months without showing reasonable progress under the circumstances in correcting those conditions which led to the removal of the child primarily based on the mother's anger management problems, because: (1) respondent refused to participate in individual therapy one time per month as required by the trial court in its March 2003 order; and (2) respondent was convicted of communicating threats in 2003 while the child was still in DSS custody.

**5. Termination of Parental Rights— best interests of child— abuse of discretion standard**

The trial court did not abuse its discretion by concluding that termination of parental rights was in the minor child's best interest, because: (1) the child has been in stable foster care since 2002, his foster parents hope to adopt him, and the trial court noted the adoption would likely be approved; (2) the foster parents have previously adopted children and were noted by the trial court to be of good health and character; and (3) the court noted the child was a healthy child with no significant behavioral or physical problems that would hamper his adoption.

Judge TYSON dissenting.

Appeal by respondents from an order entered 11 July 2006, *nunc pro tunc* 8 June 2006, by Judge P. Gwynett Hilburn in Pitt County District Court. Heard in the Court of Appeals 16 March 2007.

*Anthony Hal Morris for petitioner-appellee Pitt County Department of Social Services.*

*Wanda Naylor for appellee Guardian ad Litem.*

*Richard E. Jester for respondent-appellant mother.*

*Hall & Hall Attorneys at Law, P.C., by Susan P. Hall, for respondent-appellant father.*

HUNTER, Judge.

T.M. was born on 12 June 2002. At the time of his birth, the Pitt County Department of Social Services ("DSS") had legal custody of respondent-mother's two other children, T.S. and S.M. DSS had initially received a report on 26 March 2001 that T.S. and S.M. were living in an environment where domestic violence and the use and sale of drugs was occurring. T.S. and S.M. were adjudicated neglected juveniles on 13 December 2001. *In re T.S.*, 163 N.C. App. 783, 595 S.E.2d 239 (2004) (unpublished), *disc. review denied*, 360 N.C. 647, 637 S.E.2d 218 (2006).

On 13 June 2002, and as amended on 18 June 2002, DSS filed a petition alleging that T.M. was a neglected and dependent juvenile. DSS noted that it had custody of T.S. and S.M. and incorporated their court files by reference (01 J 116-17). DSS cited the siblings' court files and claimed that respondent-mother "continues to have anger

**IN RE T.M.**

[182 N.C. App. 566 (2007)]

management problems[,]" and "continued to maintain a relationship with T. Seymore, Jr. with whom she ha[d] been involved in at least two incidences of domestic violence within the last year." DSS asserted that respondent-mother's home was found not to be "safe and appropriate" for the return of T.S. and S.M. Additionally, DSS alleged that the respondent-father was "a known drug dealer and has a criminal history." DSS also reported that respondent-father "has had altercations, involving guns" with a man who resided with respondent-mother and was a caretaker for the child. Accordingly, DSS sought custody of T.M. until respondent-mother could provide a safe and permanent home. An order for nonsecure custody was entered and DSS assumed immediate custody of T.M.

On 6 March 2003, the court held an adjudication and disposition hearing. At the hearing, the court took judicial notice of the court files in 01 J 116-17, adopted findings from court orders from permanency planning review hearings held in 01 J 116-17, and adjudged T.M. to be neglected and dependent. Both respondent-mother and respondent-father appealed.

On 4 January 2005, this Court remanded the adjudication and disposition order. The Court noted that it had rendered an opinion in the siblings' case, *In re T.S.*, 163 N.C. App. 783, 595 S.E.2d 239, in which it determined that the trial court's adjudication and disposition order was "deficient because it did not contain ultimate findings of fact and specific conclusions of law[.]" *In re T.M.M.*, 167 N.C. App. 801, 803, 606 S.E.2d 416, 418 (2005). The Court remanded *In re T.S.* " ' "with instructions to make ultimate findings of fact based on the evidence and to enter clear and specific conclusions of law based on the findings of fact." ' " *Id.* at 802, 606 S.E.2d at 417 (citations omitted). This Court then concluded that, because of its holding in *In re T.S.*, the trial court's determination that T.M.M. was neglected and dependent was likewise deficient. Accordingly, the matter was remanded to the trial court for further proceedings. *Id.* at 803-04, 606 S.E.2d at 418.

On 28 December 2005, DSS filed a petition to terminate respondents' parental rights as to T.M. DSS alleged four grounds for termination: (1) that respondents had neglected T.M. within the meaning of N.C. Gen. Stat. § 7B-101(15) (2005), and pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (2005); (2) that respondents had willfully left T.M. in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting those conditions that led to the child's removal, pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) (2005);

(3) that the child had been placed in the custody of the petitioner and that respondents, for a continuous period of six months immediately preceding the filing of the petition, had failed to pay a reasonable portion of the cost of care for T.M., pursuant to N.C. Gen. Stat. § 7B-1111(a)(3); and (4) that respondents had abandoned T.M. for at least six consecutive months immediately preceding the filing of the petition, pursuant to N.C. Gen. Stat. § 7B-1111(a)(7).

Hearings were held on the petition to terminate respondents' parental rights on 10 May, 18 May, and 8 June 2006. The trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3) and (7) to terminate respondents' parental rights. The court further concluded that it was in the child's best interest that respondents' parental rights be terminated. Respondents appeal. We affirm the trial court's holdings.

I.

[1] Respondents first argue that DSS lacked standing to file the petition to terminate their parental rights. Pursuant to N.C. Gen. Stat. § 7B-1103(a)(3) (2005), petitioner could only file the petition if it had custody of T.M. Respondents cite the dispositional order entered on 6 March 2003 as purportedly granting custody of T.M. to DSS, but note that this Court found the dispositional order to be deficient and remanded the matter to the district court for further findings and conclusions. *In re T.M.M.*, 167 N.C. App. at 803-04, 606 S.E.2d at 418. However, upon remand, no new adjudicatory hearings occurred. Instead, nonsecure custody orders were entered granting custody to DSS. Respondents contend that nonsecure custody orders are temporary in nature and do not confer standing. *See* N.C. Gen. Stat. § 7B-506(a) (2005) ("[n]o juvenile shall be held under a nonsecure custody order for more than seven calendar days without a hearing on the merits or a hearing to determine the need for continued custody"). Therefore, respondents claim that petitioner lacked standing to file the petition and the trial court did not have subject matter jurisdiction. We are not persuaded.

"Standing is jurisdictional in nature and '[c]onsequently, standing is a threshold issue that must be addressed, and found to exist, before the merits of [the] case are judicially resolved.' " *In re Miller*, 162 N.C. App. 355, 357, 590 S.E.2d 864, 865 (2004) (quoting *In re Will of Barnes*, 157 N.C. App. 144, 155, 579 S.E.2d 585, 592 (2003)). In North Carolina, standing to file a petition to terminate parental rights is prescribed by N.C. Gen. Stat. § 7B-1103(a)(3). N.C. Gen. Stat.

§ 7B-1103(a)(3) (2005) provides that a petition to terminate parental rights may be filed by "[a]ny county department of social services, consolidated county human services agency, or licensed child-placing agency *to whom custody of the juvenile has been given by a court of competent jurisdiction." Id.* (emphasis added).

Here, DSS was initially granted custody of T.M. by nonsecure custody order entered on 13 June 2002. Although legal custody was granted to DSS in the adjudication and disposition orders later remanded by this Court, custody was also continued with DSS by entry of successive nonsecure custody orders pursuant to N.C. Gen. Stat. § 7B-506(e). On 19 December 2005, just prior to the filing of the petition to terminate respondents' parental rights, another order granting continued nonsecure custody to DSS was entered. This order granted custody of T.M. to DSS indefinitely pending further hearings. Respondents contend that nonsecure custody orders are temporary and do not grant legal custody sufficient to confer standing. However, N.C. Gen. Stat. § 7B-1103(a)(3) does not limit standing to parties granted custody by an order entered pursuant to N.C. Gen. Stat. § 7B-905 (2005). The plain language of the statute only requires that DSS be granted "custody . . . by a court of competent jurisdiction." N.C. Gen. Stat. § 7B-1103(a)(3). Accordingly, we conclude that *the nonsecure custody order entered on 19 December 2005 was suffi-cient to confer standing to DSS.*

II.

[2] Respondents next argue that the trial court erred in exercising jurisdiction because the petition was defective in that an order granting custody of T.M. to DSS was not attached. *See* N.C. Gen. Stat. § 7B-1104(5) (2005). Respondents cite *In re Z.T.B.*, 170 N.C. App. 564, 613 S.E.2d 298 (2005), to support their contention that when a petition fails to comply with a statutory mandate, it is "facially defective and fail[s] to confer subject matter jurisdiction upon the trial court." *Id.* at 570, 613 S.E.2d at 301. Respondents' reliance on *In re Z.T.B.* is misplaced. In a subsequent case, this Court, relying on "precedential authority[,]" determined that, absent a showing of prejudice, failure to comply with N.C. Gen. Stat. § 7B-1104(5) does not deprive the trial court of subject matter jurisdiction. *In re B.D.*, 174 N.C. App. 234, 241-42, 620 S.E.2d 913, 918 (2005) (citing *In re Joseph Children*, 122 N.C. App. 468, 470 S.E.2d 539 (1996); *In re Humphrey*, 156 N.C. App. 533, 577 S.E.2d 421 (2003)), *disc. review denied*, 360 N.C. 289, 628 S.E.2d 245 (2006).

**IN RE T.M.**

[182 N.C. App. 566 (2007)]

In the instant case, the petition alleged that "[a] copy of the first order giving full legal custody of the children to the Pitt County Department of Social Services in file numbers 01 J 116-117 is attached hereto as exhibit 'A'." However, the file numbers cited to by petitioner referred to cases involving T.M.'s siblings. Furthermore, there is no indication in the record that any custody orders were actually attached to the petition to terminate respondents' parental rights. Nevertheless, despite DSS's failure to attach a copy of a custody order in accordance with N.C. Gen. Stat. § 7B-1104(5), respondent-mother fails to cite any prejudice due to DSS's technical error, and none is apparent on the record. There is no indication that respondent-mother was unaware of T.M.'s placement at any point during the case. The petition alleged that T.M. had been in DSS custody since 13 June 2002. In her answer, respondent-mother admitted that DSS had custody of T.M. Moreover, from the record on appeal, it is apparent that respondent-mother has been represented by counsel throughout much of the process, and that respondent-mother was present at many of the hearings at which custody of T.M. was granted to and then continued with DSS. In light of the foregoing, we conclude that respondent-mother has not demonstrated any prejudice arising from petitioner's failure to attach the custody order to the petition.

We further conclude that respondent-father has not established prejudice from the failure to attach the custody order. Because his whereabouts were unknown, respondent-father was not served with the initial petition alleging neglect and dependency. Although respondent-father himself did not appear in the case until 16 April 2003, when a continuance was entered and he consented to paternity testing, he was represented at various hearings by appointed counsel acting on his behalf. For example, Emma Holscher, who was respondent-father's attorney until June 2004, was present at hearings on 11-12 December 2002 and 28 February 2003. At both hearings, she was present during the testimony of DSS representative Vivian Cheek, who testified at length about respondent-mother's interaction with the children since their placement with foster families. Further, at the earlier hearing, Holscher cross-examined Cheek and Barbara Mullins, Guardian ad Litem, and also heard copious testimony from a number of different sources as to respondent-mother's efforts and desire to get her children back from DSS custody. This Court has previously ruled that the knowledge of an attorney is imputed to her client. *Long v. Joyner*, 155 N.C. App. 129, 134, 574 S.E.2d 171, 175 (2002). Thus, even though respondent-father himself did not appear

at the hearings, we can impute to him the knowledge that his child was in DSS custody, like the father in *B.D. In re B.D.*, 174 N.C. App. at 242, 620 S.E.2d at 918.

While the dissent is correct that respondent-father was not represented by counsel at the time the petition for termination of his rights was filed on 28 December 2005, this fact does not resolve the issue before us. The issue here is whether respondent-father was prejudiced because the failure to attach the custody order made him unaware of his children's placement with DSS, not whether or not he was adequately represented on the date the petition for termination was filed.

As mentioned above, T.M. was placed in DSS custody in June 2002 and remained in DSS custody through December 2005 when the petition was filed. The record shows that respondent-father's participation in the case began in April 2003, at which point T.M. had been in DSS custody for ten months, when a test proved his paternity of T.M. Emma Holscher appeared on his behalf for the first time on 16 August 2003. The record also shows that Holscher represented him, as detailed above, at several hearings where it was made clear that the child was in DSS custody. Holscher represented him through 8 July 2004, when she withdrew not due to lack of contact with her client but because she had agreed to perform contract work for DSS, making her representation of him a conflict of interest. Jay Saunders was appointed on that same date and represented respondent-father for more than a year, representing him at hearings to continue DSS custody on 12 May and 4 August 2005, and withdrawing on 8 August 2005 for lack of contact with his client.

Thus, from the time respondent-father became a party to the case in April 2003 through his second counsel's withdrawal in August 2005, he was consistently represented by counsel at hearings at which it was made abundantly clear that his child was in DSS custody. Therefore, because the record indicates that respondent-father's attorneys were clearly aware of T.M.'s placement with DSS, we impute that knowledge to him and conclude that respondent-father was not prejudiced by the failure to attach the custody order.

III.

[3] We next consider respondent-father's argument that the trial court erred on two procedural points: First, that DSS was required per statute to file the termination of parental rights action within

IN RE T.M.

[182 N.C. App. 566 (2007)]

sixty days of the permanency planning hearing, which it did not do; and second, that the hearing was held outside the statutorily mandated limit of ninety days from filing of the petition.

At the permanency planning hearing in this case on 10 July 2003, the court ordered that DSS file a petition for termination of parental rights against both respondent-appellants. According to N.C. Gen. Stat. § 7B-907(e) (2005), DSS was required to file the petition within sixty calendar days of this order, but such petition was not filed until 28 December 2005. Respondent-father argues that this deprived the trial court of subject matter jurisdiction in the matter. We do not agree.

This Court has held that the time limitation specified by this statute "is directory rather than mandatory and thus, not jurisdictional." In re B.M., M.M., An.M., Al.M., 168 N.C. App. 350, 354, 607 S.E.2d 698, 701 (2005); In re C.L.C. K.T.R., A.M.R., E.A.R., 171 N.C. App. 438, 445, 615 S.E.2d 704, 708 (2005). Further, respondent-father has not shown any prejudice resulting from the delay; as in In re B.M. and In re C.L.C., respondent-father could have filed an appeal under N.C. Gen. Stat. § 7B-1001 (2005) but did not, nor did he take advantage of the time delay to contact DSS regarding the child or attempt to visit T.M. He argues to this Court only that the delay "grossly prejudiced" himself and the child. Because respondent-father has failed to show prejudice arising from the delay, we overrule this assignment of error.

Once the petition was filed on 28 December 2005, hearings were held beginning on 10 May 2006, 133 days later. Per N.C. Gen. Stat. § 7B-1109(a) (2005), hearings were required to commence within ninety days of the petition's filing. Again, however, respondent-father has failed to establish any prejudice resulting from this delay.[1] See In re R.R., 180 N.C. App. 628, 636, 638 S.E.2d 502, 508 (2006).

Respondent-father does not otherwise contest the trial court's holdings. Finding no merit in the arguments presented, we affirm the trial court in all its holdings regarding respondent-father.

We have in the past cautioned courts and parties that their failure to comply with legislative mandates in these cases disregards the

---

1. Respondent-father's reliance on the Court's holding in In re C.J.B. that the longer the delay, "the more likely prejudice will be readily apparent[,]" is misplaced, as this comment relates to the portion of this statute mandating a thirty-day limit for reducing the termination of parental rights to a written order. In re C.J.B. & M.G.B., 171 N.C. App. 132, 135, 614 S.E.2d 368, 370 (2005); N.C. Gen. Stat. § 7B-1109(e) (2005).

best interests of the children. The recent streamlining of process for these cases by both the state legislature's 2006 amendments and this Court's rules updates are evidence of the importance this state places on resolving these cases as quickly as possible to ensure our legal system is serving the best interests of the children. As such, we encourage trial courts to consider sanctions of parties where appropriate when the parties fail to comply with the legislature's mandates.

## IV.

**[4]** We next consider respondent-mother's argument that the trial court erred by finding that there were grounds to support the termination of her parental rights. Respondent-mother further argues that the trial court's findings of fact are not supported by competent evidence in the record. We disagree.

N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "[T]he party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997).

In the case *sub judice*, the trial court concluded that respondent-mother had willfully left T.M. in foster care for more than twelve months without showing reasonable progress under the circumstances in correcting those conditions which led to the removal of the child. N.C. Gen. Stat. § 7B-1111(a)(2). This Court has stated that:

> [T]o find grounds to terminate a parent's rights under G.S. § 7B-1111(a)(2), the trial court must perform a two part analysis. The trial court must determine by clear, cogent and convincing evidence that a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and, further, that as of the time of the hearing, as demonstrated by clear, cogent and convincing evidence, the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.

*In re O.C. & O.B.*, 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (citation omitted), *disc. review denied*, 360 N.C. 64, 623 S.E.2d 587 (2005).

Here, T.M. has been in petitioner's custody with placement outside respondent-mother's home since June 2002. One of the primary reasons T.M. was removed from respondent-mother's care was due to respondent-mother's anger management problems. Prior to T.M.'s birth, on 13 June 2001, respondent-mother had been arrested after a traffic stop. Police had received information that T. Seymore, Jr. was "delivering [drugs] to the Greenville City Limits." T.S. and S.M. were also in the car with respondent-mother and were not in child restraints. Police received consent. to search the vehicle from Seymore. At that time, respondent-mother jumped out of the vehicle, started yelling, cursing, and telling police to leave Seymore alone. Police asked respondent-mother to stay out of the investigation, but she continued yelling and cursing. Police tried to handcuff respondent-mother, but she resisted. When she was placed in the backseat of a patrol car, she kicked the door of the vehicle and kicked an ashtray off the door inside the vehicle. After being transported to the police station, she tried to spit on the arresting officer. On 13 July 2001, DSS filed a petition alleging that T.S. and S.M. were neglected and dependent juveniles. "DSS's request was based upon 'the domestic violence and substance abuse issues, illegal drug activity, respondent mother's anger and the risks associated with the children's care and environment[.]' " *In re T.S.*, 163 N.C. App. at 783 (slip op. 2), 595 S.E.2d at 239 (slip op. 2).

In the petition alleging neglect, DSS claimed that respondent-mother continued to have anger management problems. In an attempt to address this issue, the trial court in its March 2003 adjudication order required that respondent-mother "participate in individual therapy one time per month at Pitt County Mental Health for her anger management." However, respondent-mother did not comply. Although respondent-mother did complete group anger management therapy in early 2003, she wholly failed to attend individual therapy as required by the court's order. On 9 May 2003, Lee Mattson, a counselor with Pitt County Mental Health, wrote to the Guardian ad Litem: "Today I closed her chart. I have not seen her since February. She has made appointments, skipped them and not notified me so I could make another appointment in that time slot. Considering her lack of interest in continued treatment I see no reason to continue maintaining her chart." There is no evidence in the record that respondent-mother ever resumed attending individual therapy as ordered by the court. Additionally, respondent-mother continued to have anger management issues while T.M. was in DSS custody. In 2003, she was convicted of communicating threats. Respondent-mother was charged

with calling the victim on the telephone and leaving a message saying: "You bitch. Your ass is mine. You and your F-ing daughter are going to get F-ed up." Based on this evidence and accordant findings, the trial court could reasonably conclude that respondent had willfully failed to correct those conditions that led to T.M.'s removal from respondent-mother's care. *See In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 ("[w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort"), *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). Accordingly, we conclude there was clear, cogent, and convincing evidence in the record to support the trial court's conclusion that grounds exist to terminate respondent-mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).

Since grounds exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to support the trial court's order, the remaining grounds found by the trial court to support termination need not be reviewed by the Court. *Taylor*, 97 N.C. App. at 64, 387 S.E.2d at 233-34.

[5] Respondent-mother finally argues that the trial court erred by concluding that termination was in T.M.'s best interest. Once the trial court has found that grounds exist to terminate parental rights, "the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2005). The trial court's decision to terminate parental rights at the disposition stage is discretionary. See *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). Here, T.M. has been in stable foster care since 2002, and his foster parents hope to adopt him. The court noted that "[t]he foster parents have previously adopted children and are of good health and good character" and their adoption of T.M. would likely be approved. Furthermore, the court found that T.M. was a "healthy child with no significant behavioral or physical problems that would hamper his adoption." Accordingly, we conclude that the trial court did not abuse its discretion in determining that termination of respondent-mother's parental rights was in T.M.'s best interest.

For the foregoing reasons, we affirm the trial court's termination of parental rights as to both respondents.

Affirmed.

Judge McCULLOUGH concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge, dissenting.

The majority's opinion erroneously affirms the trial court's termination of respondent-father's parental rights to T.M. The trial court was without power to exercise subject matter jurisdiction over respondent-father pursuant to N.C. Gen. Stat. § 7B-1104(5).

Alternatively, I vote to reverse the trial court's order because: (1) DSS failed to file the petition to terminate respondent-father's parental rights until six months after being ordered to do so, and more than four months after the maximum sixty days time after the permanency planning hearing as mandated by N.C. Gen. Stat. § 7B-907(e) (2005) and (2) a termination hearing was not held until more than *two* years after the maximum ninety days elapsed from the filing of the petition as mandated by N.C. Gen. Stat. § 7B-1109(a) (2005), both to the extreme prejudice of respondent-father, his child, and all other parties involved. I vote to reverse and respectfully dissent.

## I. N.C. Gen. Stat. § 7B-1104(5)

Respondent-father asserts the trial court never acquired subject matter jurisdiction and argues the petition to terminate his parental rights was defective pursuant to N.C. Gen. Stat. § 7B-1104(5). I agree. The statutory required order granting custody of T.M. to DSS was not attached to the petition.

N.C. Gen. Stat. § 7B-1104(5) states:

The petition, or motion pursuant to G.S. 7B-1102, . . . *shall* set forth such of the following facts as are known; and with respect to the facts which are unknown the petitioner or movant *shall* so state:

(5) The name and address of any person or agency to whom custody of the juvenile has been given by a court of this or any other state; *and a copy of the custody order shall be attached to the petition or motion.*

(Emphasis supplied).

Here, the petition alleged that "[a] copy of the first order giving full legal custody of the children to the Pitt County Department of Social Services in file numbers 01 J 116-17 is attached hereto as exhibit 'A'." This allegation is false. The file numbers cited by peti-

tioner solely referred to earlier cases that involved T.M.'s siblings. No evidence in the record shows any custody orders regarding T.M. were attached to the petition to terminate respondent-father's parental rights to T.M.

## A. *In re Z.T.B.*

This Court has specifically addressed this issue in *In re Z.T.B.*, 170 N.C. App. 564, 613 S.E.2d 298 (2005) and in *In re B.D.*, 174 N.C. App. 234, 620 S.E.2d 913 (2005), *disc. rev. denied*, 360 N.C. 289, 628 S.E.2d 245 (2006). In *In re Z.T.B.*, the respondent argued DSS's petition was defective because no existing custody order was attached "to the petition as explicitly required by North Carolina General Statutes section 7B-1104." 170 N.C. App. at 568, 613 S.E.2d at 300. This Court reversed the trial court's order terminating the respondent's parental rights and stated because "the petition at issue in the instant case fails to comply with the mandatory requirements of [N.C. Gen. Stat. § 7B-1104(5)], we hold that *it is facially defective and failed to confer subject matter jurisdiction upon the trial court.*" *Id.* at 570, 613 S.E.2d at 301 (emphasis supplied).

In reaching its holding, this Court distinguished the facts in an earlier decision in *In re Humphrey*, 156 N.C. App. 533, 577 S.E.2d 421 (2003). *Id.* at 569, 613 S.E.2d at 301. "[I]n [*In re Humphrey*], this Court declined to dismiss a petition for termination of parental rights that failed to conform to the requirements of North Carolina General Statutes section 7B-1104 absent a showing that the respondent was prejudiced by the omission." *Id.* (citing *In re Humphrey*, 156 N.C. App. at 539, 577 S.E.2d at 426.). This Court in *In re Z.T.B.* stated, "the defect in the petition in [*In re Humphrey*] could be overcome by information contained on the face of the petition itself." 170 N.C. App. at 570, 613 S.E.2d at 301.

## B. *In re B.D.*

In the case of *In re B.D.*, the respondent argued "that the trial court was without jurisdiction to proceed with the termination hearing because petitioner failed to attach a copy of the custody order regarding [the child] to the petition." 174 N.C. App. at 241, 620 S.E.2d at 917-18. The respondent relied upon *In re Z.T.B.* and contended "that failure to attach a custody order results in a 'facially defective' petition which 'fails to confer subject matter jurisdiction upon the trial court[,]' " *Id.* at 241, 620 S.E.2d at 918 (quoting *In re Z.T.B.*, 170 N.C. App. at 570, 613 S.E.2d at 301.).

The panel of this Court in *In re B.D.* made no attempt to distinguish *In re Z.T.B.'s* holding that the petition was "facially defective and failed to confer subject matter jurisdiction upon the trial court" and relied instead on the "precedential authority" of *In re Humphrey* and overruled the respondent's argument, and stated "respondents are unable to demonstrate any prejudice arising from petitioner's failure to attach the pertinent custody order to the petition." *In re Z.T.B.*, 170 N.C. App. at 570, 613 S.E.2d at 301; *In re B.D.*, 174 N.C. App. at 241-42, 620 S.E.2d at 918. This Court noted, "there is also no indication that respondents were unaware of [the child's] placement at any point during the case." *In re B.D.*, 174 N.C. App. at 242, 620 S.E.2d at 918. Also, "the petition noted that custody of [the child] was given by prior orders of the trial court, and it referenced the court file wherein those orders were entered." *Id.*

### C. Analysis

Here, no evidence in the record shows DSS attached the statutory required custody order to the petition to terminate respondent-father's parental rights. "[T]he defect in the petition . . . [can] be overcome by information contained on the face of the petition itself." *In re Z.T.B.*, 170 N.C. App. at 569-70, 613 S.E.2d at 301.

DSS's error may be excused by information on the face of the petition informing the parent that DSS had taken custody of the child. The petition unequivocally states T.M. "has been in the custody of the Pitt County Department of Social Services . . . since June 13, 2002." Respondent-father must show he was prejudiced by DSS's failure to attach the custody order to the petition to terminate his parental rights. *In re Humphrey*, 156 N.C. App. at 539, 577 S.E.2d at 426; *In re B.D.*, 174 N.C. App. at 241, 620 S.E.2d at 918.

### 1. Prejudice

The majority's opinion concludes respondent-father was not prejudiced because the record indicates he was aware through his attorneys of T.M.'s placement with DSS. I disagree.

DSS filed the petition to terminate respondent-father's parental rights on 28 December 2005. Respondent-father's whereabouts were unknown when the petition was filed. The trial court appointed two different attorneys over the course of the proceedings to represent respondent-father. Respondent-father was not served with the initial petition alleging neglect and dependency. Respondent-father neither received notice to appear at the initial non-secure custody hearing,

nor did he actually appear at the adjudicatory hearing. Respondent-father did not appear in the case until 16 April 2003 when he was represented by Emma Holscher, Esq., consented to paternity testing, and a continuance was entered. Emma Holscher withdrew as respondent-father's attorney on 14 July 2004 to perform "contract work" for DSS and the trial court appointed Jay Saunders, Esq., to represent respondent-father.

On 28 September 2005, the court entered a non-secure custody order and also allowed Jay Saunders to withdraw from representation due to counsel's lack of contact with respondent-father. At the non-secure custody hearing immediately preceding the filing of the petition to terminate his parental rights, respondent-father was incarcerated in Virginia, was not represented by counsel, and was not served with notice.

Contrary to the majority opinion's conclusion, respondent-father was never initially served and could not be aware, through an appointed attorney who never had contacted him, of his child's whereabouts at the time the petition was filed on 28 December 2005. For the majority's opinion to conclude respondent-father was not prejudiced because he received "imputed notice" of the custody order through an appointed counsel who never spoke with him is disturbing and fallacious given the constitutional rights at stake and the decision the court entered.

Respondent-father's attorney, Jay Saunders, Esq., also withdrew from representation due to lack of contact with respondent-father before the petition to terminate his parental rights was filed. No subsequent counsel was appointed. Respondent-father asserted he was prejudiced by DSS's failure to attach the custody order because the record does not indicate he was made aware of T.M.'s placement with DSS when the petition to terminate his parental rights was filed or for five months thereafter. Respondent-father was neither present at the majority of the pre-termination hearings, nor was he represented by counsel at critical times throughout the process.

### 2. Due Process

Respondent-father has demonstrated extreme prejudice that strikes at the core of Due Process. Neither the fundamental right to be apprised of the pendency of an action nor respondent-father's right to be present and heard are present here. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 873

(1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.").

Without his fundamental statutory and constitutional rights being protected, respondent-father's constitutional right to the care, custody, and control of his child were violated. *See Adams v. Tessener*, 354 N.C. 57, 60, 550 S.E.2d 499, 501 (2001) (internal quotation omitted) ("[A] parent enjoys a fundamental right to make decisions concerning the care, custody, and control of his or her children under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.").

I vote to dismiss the trial court's order due to the failure of the petition to confer subject matter jurisdiction on the trial court to terminate respondent-father's parental rights. The lack of jurisdiction can be raised at any time and cannot be waived. *See Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85-86 (1986) (internal citations omitted) ("The question of subject matter jurisdiction may be raised at any time, even in the Supreme Court. When the record clearly shows that subject matter jurisdiction is lacking, the Court will take notice and dismiss the action *ex mero motu*.").

## II. N.C. Gen. Stat. § 7B-907(e) and § 7B-1109(a)

Respondent-father also argues the trial court erred in terminating his parental rights due to DSS's failure to file the petition to terminate his parental rights within sixty days of the permanency planning hearing as mandated by N.C. Gen. Stat. § 7B-907(e). Respondent-father additionally argues the trial court erred by terminating his parental rights to T.M. because it failed to hold a hearing for more than *two* years after the maximum ninety days allowed after the filing of the petition to terminate his parental rights as mandated by N.C. Gen. Stat. § 7B-1109(a). The majority's opinion holds respondent-father failed to show any prejudice from the extreme delays on either or both issues. I disagree.

N.C. Gen. Stat. § 7B-907(e) states, "[DSS] *shall* file a petition to terminate parental rights within 60 calendar days from the date of the permanency planning hearing unless the court makes written findings why the petition cannot be filed within 60 days." (Emphasis supplied). Here, the permanency planning hearing was conducted on 10

IN RE T.M.

[182 N.C. App. 566 (2007)]

July 2003. The trial court ordered DSS to file a petition to terminate respondent-father's parental rights.

The trial court failed to make any written findings to show why the petition could not be filed within the sixty days or to extend the time in which DSS could file the petition. The petition to terminate respondent-father's parental rights was not filed until 28 December 2005, *more than two years* after the sixty day maximum required by N.C. Gen. Stat. § 7B-907(e).

Respondent-father argues he and T.M. were prejudiced by DSS's unexplained and excessive delay. Respondent-father argues he and T.M. were both prejudiced because:

Any hope of closure or permanence brought on by the allowance or denial of a Petition to Terminate Parental Rights has been hopelessly set adrift by the delay in filing. While some modest delay would be excusable, this delay was *fifteen times the 60 days allowed* by our Legislature for filing, *or 842 days*.

(Emphasis supplied).

N.C. Gen. Stat. § 7B-1109(a) mandates:

The hearing on the termination of parental rights *shall* be conducted by the court sitting without a jury and shall be held in the district at such time and place as the chief district court judge shall designate, but *no later than 90 days from the filing of the petition* or motion unless the judge pursuant to subsection (d) of this section orders that it be held at a later time.

(Emphasis supplied). Here, the petition to terminate respondent-father's parental rights was filed on 28 December 2005. The first hearing on the petition was held on 10 May 2006, 134 days after the petition was filed and 74 days after the maximum time allowed by N.C. Gen. Stat. § 7B-1109(a).

Respondent-father argues he was prejudiced by this delay because his right to appeal was delayed and "any hope of finality or permanence for the [respondent-father] or [T.M.] was dashed by the failure to timely hear this matter." I agree.

Respondent-father, T.M., and all other parties are prejudiced by DSS's repeated and extraordinary delays in the initiation, resolution, and disposition of this matter. DSS's unexplained and repeated failures to comply with statutory time limits "defeated the purpose

of the time requirements specified in the statute, which is to provide [all] parties with a speedy resolution of cases where juvenile custody is at issue" and prejudiced respondent-father and T.M. *In re B.M., M.M., An.M., and Al.M.*, 168 N.C. App. 350, 355, 607 S.E.2d 698, 702 (2005).

Prejudice is also shown because the "appellate process was put on hold[] [and] any sense of closure for the children, respondent, or the children's current care givers was out of reach . . . ." *In re C.J.B., M.J.B.*, 171 N.C. App. 132, 135, 614 S.E.2d 368, 370 (2005). Respondent-father, T.M., and the child's care-givers suffered severe prejudice resulting from DSS's repeated and cumulative failures to comply with the statutory mandated maximum time limits from the beginning and throughout the child custody and termination of parental rights proceedings. I vote to reverse the order of the trial court.

### III. Conclusion

The trial court did not acquire subject matter jurisdiction under N.C. Gen. Stat. § 7B-1104(5) due to of DSS's failure to attach the statutory required custody order to its petition to terminate respondent-father's parental rights. Respondent-father was prejudiced because the record does not show he was aware of T.M.'s placement when the petition to terminate his parental rights was filed or when the many subsequent hearings were held.

Respondent-father's appointed attorney never made contact with him and was allowed to withdraw. No subsequent counsel was appointed to represent respondent-father at the termination hearing in gross violation of his fundamental rights·as a parent and his right to basic due process. *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873; *Adams*, 354 N.C. at 60, 550 S.E.2d at 501.

All statutory mandated time limits under N.C. Gen. Stat. § 7B-907(e) ·and § 7B-1109(a) were grossly violated. All parties were prejudiced by DSS's failures because respondent-father was prohibited from filing an appeal and all interested parties were denied a speedy resolution of this case.

For these reasons, individually or collectively, I vote to reverse the trial court's order terminating respondent-father's parental rights. I respectfully dissent.