An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-622

Filed 18 February 2026

Cabarrus County, No. 23JT000160-120

IN THE MATTER OF:
F.T.S.

Appeal by Respondent from an order entered 20 March 2015 by Judge D. Brent Cloninger in Cabarrus County District Court. Heard in the Court of Appeals 29 January 2025.

*Attorney Jason R. Page, for Respondent–Appellant Mother.*

*Bacoum, Lewis, & Baumgardner, by Attorney John M. Lewis, for Petitioner–Appellee Guardian ad Litem.*

MURRY, Judge.

Jennifer Jordan (Mother) appeals from the trial court's order terminating her parental rights to her minor child, F.T.S. (Faye).[1] On appeal, Mother argues that the trial court erred by terminating her parental rights to Faye because (1) the trial court lacked subject-matter jurisdiction; (2) attorney Benjamin Goff "did not perform the

---

[1]  In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor child by a pseudonym to protect her identity. *See* N.C. R. App. P. 42(b).

duties of either a guardian ad litem or an attorney advocate"; (3) no competent evidence supported certain findings of fact; (4) the supported findings of fact did not support the trial court's conclusions; and (5) termination was not in Faye's best interest. For the following reasons, this Court affirms the trial court's termination of Mother's parental rights.

## I.    Background

Faye was born in May 2019 to Mother and Charles Smith (Parents).[2] On 26 June 2020, Faye's maternal grandfather, Jeffrey Jordan (Grandfather), filed for and received emergency custody of her. At this time, Parents lived in a "filthy" home "filed with mold," cockroaches, and "broken glass," where they regularly used illegal drugs and other impairing substances. On 6 July 2020, the trial court reviewed the emergency custody order and granted Grandfather temporary sole custody of Faye. On 17 December 2020, the trial court conducted a custody hearing. On 31 December 2020, the trial court granted Grandfather sole custody of Faye. The trial court also ordered Parents to submit to a hair-follicle drug test and release the results to the trial court and Grandfather's counsel.

On 28 July 2023, Grandfather petitioned to terminate Parents' parental rights, alleging neglect, willful failure to make reasonable progress, dependency, and willful abandonment under N.C.G.S. §7B-1108. The petition's third paragraph alleged that

---

[2]    Charles Smith is not a party to this appeal.

Grandfather had "exercised sole custody of [Faye] since on or about" 26 June 2020. The petition's seventh paragraph alleged that Grandfather "sought and obtained custody of [Faye] in a Cabarrus County action"; it provided the action's name and file number but did not attach the order. On 16 November 2023, Mother admitted in her petition to both of these paragraphs.

On 30 November 2023, the trial court appointed Benjamin Goff to serve as Faye's guardian *ad litem* (GAL). The AOC-J-207 Form *Order to Appoint or Release GAL and Attorney Advocate* listed Goff's information in the box labeled *Name and Address of Attorney Advocate* but left all other boxes blank. On 12 August 2024, the trial court entered a subsequent pretrial order designating Attorney Goff as Faye's GAL.

At a 5 December 2024 termination hearing, the parties presented conflicting evidence regarding Mother's housing stability, substance use, financial support, and efforts to maintain contact with Faye following the custody order. Grandfather testified to Mother not taking her required follicle drug test. Mother testified to enrolling in a parenting course in November 2023 but proffered no evidence of its completion. Goff testified to having a phone conversation with Grandfather, during which Grandfather stated that he has "had no contact with" Mother since November 2021. He also testified that Grandfather had "no issues caring for" Faye and advised that, due to Mother's lack of involvement in Faye's life, it would be in Faye's best interest that her parental rights be terminated. Mother did not object to Goff's

appointment as GAL at the termination hearing, and the hearing's transcript and termination order listed Goff as Faye's GAL.

On 20 March 2025, the trial court entered an adjudication order finding that:

21. Despite knowing how to contact Grandfather by cell phone or a physical visit to his home, Mother made no effort to visit with Faye from 2021 through 2023. Mother was able to produce a few text messages to Grandfather limited in number and dated from 2021.

. . . .

26. Mother did not call Faye on her birthday, send cards or gifts for her birthday, or provide Christmas gifts for Faye. Mother testified that Grandfather blocked her from calling him, which Grandfather disputed.

. . . .

28. GAL Ben Goff testified that he is of the opinion that Grandfather is an appropriate and suitable placement for Faye and that it is in Faye's best interest that the parental rights of both parents be terminated to provide permanence.

29. Faye has been in the custody of Grandfather for more than four years.

. . . .

35. Parents have foregone all parental duties and relinquished all parental claims for at least six consecutive months prior to filing of the termination petition.

(Quotation modified.) The trial court found four grounds for termination of Mother's parental rights: neglect, willful failure to make reasonable progress, dependency, and willful abandonment. Concluding that termination would be in Faye's best interests, the trial court terminated Mother's parental rights. Mother timely appealed.

## II.    Jurisdictional Analysis

As a threshold matter, Mother argues that the trial court "lacked

subject-matter jurisdiction because the custody order was not attached to the petition and was not admitted into evidence." We review *de novo* whether a trial court has subject-matter jurisdiction. *In re T.P.*, 254 N.C. App. 286, 289 (2017). Because her appeal concerns "order[s] that terminate [her] parental rights," this Court has subject-matter jurisdiction to hear Mother's appeal of the termination orders. N.C.G.S. § 7B-1001(a)(7) (2025).

A trial court lacking subject-matter jurisdiction "has no power to act and any resulting judgment is void." *In re N.P.*, 376 N.C. 729, 731 (2021) (quotation omitted). Because subject-matter jurisdiction "never depend[s] upon the conduct, . . . consent, waiver[,] or estoppel" of the parties, a party may challenge the trial court's subject-matter jurisdiction at any time during a case, including on appeal. *In re T.R.P.*, 360 N.C. 588, 595 (2006) (quotations omitted). But we will "indulge[ ] in favor of jurisdiction" "every presumption not inconsistent with the record." *In re N.T.*, 368 N.C. 705, 707 (2016) (quotation omitted). Our district courts have exclusive original jurisdiction over parental-termination proceedings. *See* N.C.G.S. §§ 7B-200(a)(4), -1101. Under N.C.G.S. § 7B-1104, a termination petition must state the name and address of anyone awarded custody of the juvenile and must attach a copy of that custody order. *Id.* § 7B-1104(5). But this Court has consistently held that a trial court retains jurisdiction even if it commits the "technical defect" of failing to attach a prior custody order absent prejudice to the respondent. *In re T.M.*, 182 N.C. App. 566, 571 (2007).

Here, Mother shows no prejudice by Grandfather's failure to attach a copy of the custody order to the petition as required by N.C.G.S. § 7B-1104(5). In her answer, Mother admitted that Grandfather "exercised sole custody of [Faye] since on or about" 26 June 2020 and identified by file number the order awarding him custody. The record does not indicate that Mother was ever unaware of Faye's placement. *See T.M.*, 182 N.C. App. at 572 (holding no error from omitted custody order where mother admitted to custody arrangement and record indicated her awareness of child's placement). Rather, the record reflects that both parties and the trial court knew of the custody order, which itself appears in the record. *See id.* . Because Mother fails to show any prejudice arising from Grandfather's failure to attach a copy of the custody order in compliance with N.C.G.S. § 7B-1104(5), this Court has subject-matter jurisdiction to hear this appeal.

## III. Substantive Analysis

Mother argues that the trial court erred by terminating her parental rights to Faye. She first contends that Goff "did not perform the duties of either a [GAL] or an attorney advocate." As to the termination order, Mother challenges certain findings of fact as being unsupported by the evidence and argues that the remaining findings of fact do not support the trial court's conclusions finding termination grounds based on neglect, dependency, willful abandonment, and willfully leaving Faye in placement outside the home for more than twelve months. For the following reasons, we affirm the trial court's termination of Mother's parental rights.

## A. Guardian *Ad Litem*

First, Mother argues that the trial court erred by not appointing a GAL for Faye because the trial court appointed Goff only as an attorney advocate. She also asserts that Goff did not fulfill the duties of a GAL because he neither "met Faye," "spoke to any witnesses other than" Grandfather, "met [Grandfather] in person," nor "visit[ed Faye's] home." Although Mother did not object to Goff's appointment as GAL at trial, his appointment is "a statutory mandate" that we review *de novo. In re JC.-B.*, 276 N.C. App. 180, 192 (2021). For the following reasons, we disagree and conclude that Goff fulfilled his duties as Faye's properly appointed GAL.

### 1. *GAL Appointment*

We first address whether the trial court properly appointed Goff as Faye's GAL.[3] In a termination proceeding, N.C.G.S. § 7B-1108(b) requires the trial court to appoint a GAL to "represent the best interests of the juvenile" when a respondent parent "denies any material allegation of the [termination] petition." N.C.G.S. § 7B-1108(b) (2025). The trial court must appoint an attorney advocate "to assist those [GALs] who are not attorneys licensed to practice in North Carolina." N.C.G.S. § 7B-1108(b). It also orders the appointment of GALs and attorney advocates through

---

[3]     Mother fails to identify a standard of review for this issue. On appeal, a party's "argument shall contain a concise statement of the applicable standard(s) of review for each issue, which shall appear either at the beginning of the discussion of each issue or under a separate heading placed before the beginning of the discussion of all the issues." N.C. R. App. P. 28(b)(6). "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." *Id*. While we grant appellate review, we nonetheless note this Rule violation.

the aforementioned AOC-J-207, which includes preprinted sections for the trial court to designate the appointed attorney's contact information and a box to mark if the "attorney advocate is also acting as GAL."

But the trial court's failure to complete the AOC-J-207 form is merely a clerical error where the record indicates that it properly appointed a GAL. In *In re C.J.C.*, 374 N.C. 42, 44 (2020), the Supreme Court held that the trial court did not prejudicially err by leaving the GAL box blank on the AOC-J-207 form where it wrote the appointed attorney's name in the attorney-advocate box. The Court held that the record "plainly indicate[d] that this failure of the district court judge to check the GAL box was merely a clerical error, not a prejudicial or substantive error." *Id.* at 45; *see In re A.D.L.*, 169 N.C. App. 701, 707 (2005) (no prejudicial error where record failed to disclose GAL appointment papers, but GAL carried out her applicable duties).

Here, the trial court appointed Goff as a GAL for Faye because Mother denied the termination petition's allegations. But the relevant AOC-J-207 form listed Goff's name and contact information in the boxed labeled *Attorney Advocate* and left the form's GAL section blank. In other words, the trial court failed to check the box indicating that Goff would act as both Faye's attorney advocate *and* GAL. Nonetheless, the trial court thereafter treated Goff as the GAL during the proceedings and listed him as the GAL in both the termination order and the hearing transcript. Thus, the record clearly indicates that the trial court did in fact appoint

Goff as a GAL for Faye, clerical error notwithstanding. *See C.J.C.*, 374 N.C. at 45. Because clerical or technical errors are harmless where a reversal would not result in a different verdict, Mother cannot show prejudice from this clerical error. *See McKeel v. Holloman,* 163 N.C. 132 (1913) (holding that clerical or technical errors are harmless where reversal would not result in a different verdict).

### 2. *Fulfillment of GAL Duties*

Because we hold that the trial court appointed Goff as the GAL, we must determine whether it ensured that he carried out his duties as required by N.C.G.S. §§ 7B-601, -1108; *see S.D.H.*, 296 N.C. App. at 402 ("conclud[ing] that the Juvenile Code imposes an implicit duty upon the trial court to ensure the role(s) of the guardian ad litem are performed as required by statute.").

A GAL "represents a juvenile within the meaning of N.C.G.S. §§ 7B-601 and 7B-1108" (1) by "investigati[ng] to determine the facts, the needs of the juvenile, and the available resources within the family and community to meet those needs"; (2) by "offer[ing] evidence and examin[ing] witnesses at adjudication"; (3) by "conduct[ing] follow-up investigations to insure" the "proper[ ] execut[ion]" of court orders"; (4) by "report[ing] to the court when the [juvenile's] needs . . . are not being met"; and (5) by "protect[ing] and promot[ing her] . . . best interests . . . until formally relieved of the[se] responsibilit[ies]." *Id.* § 7B-601(a).

Here, Goff investigated by contacting Grandfather about his care for Faye, during which Grandfather stated that has "had no contact with" Mother since

November 2021. At the termination hearing, Goff testified that, based on this conversation, Grandfather "has no issues caring for" Faye. Based on Mother's lack of involvement, Goff advised that the termination of her parental rights would be in Faye's best interest. Therefore, he properly fulfilled his duty as the appointed GAL throughout the proceedings and represented Faye within the meaning of N.C.G.S. § 7B-601.

## B. Termination Order

Second, Mother argues that the trial court erred by terminating her parental rights to Faye. She challenges several of the trial court's findings of fact as unsupported by the evidence and argues that the remaining findings do not support the trial court's grounds for termination. *See* N.C.G.S. § 7B-1111(a)(1) (neglect); *id.* § 7B-1111(a)(2) (willful failure to make reasonable progress); *id.* § 7B-1111(a)(6) (dependency); *id.* § 7B-1111(a)(7) (abandonment).

A proceeding for termination of parental rights has two stages: adjudication and disposition. *See id.* §§ 7B-1109, -1110. At the adjudication stage, the petitioner must "prove by clear, cogent, and convincing evidence that at least one ground for termination exists." *In re K.J.D.*, 297 N.C. App. 49, 52 (2024) (quotation omitted). The trial court need find only "one ground" for termination under N.C.G.S. § 7B-1111 to "support a termination of parental rights," *In re A.R.A.*, 373 N.C. 190, 194 (2019), at which point it proceeds to the dispositional stage to determine whether termination would be in the child's "best interest," *In re B.O.A.*, 372 N.C. 372, 380 (2019)

(quotation omitted). If this evidence exists, the findings of fact are "conclusive even if the record contains evidence that would support a contrary finding." *In re S.R.*, 384 N.C. 516, 520 (2023). Unchallenged "findings of fact . . . are binding on appeal." *In re G.B.,* 377 N.C. 106, 111 (2021). We review the trial court's conclusions of law *de novo* to determine whether its "adjudicatory findings of fact support its conclusion of law that grounds existed to terminate parental rights." *In re M.R.F.*, 378 N.C. 638, 641 (2021). In so doing, we "review only those findings necessary to support the trial court's determination that grounds existed to terminate [a] respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407 (2019). Once the trial court adjudicates termination grounds, we review its decision to terminate parental rights at disposition only for abuse of discretion. *See In re C.V.D.C.*, 374 N.C. 525, 528–29 (2020). For the reasons below, we hold that the trial court did not abuse its discretion by terminating Mother's parental rights to Faye.

### 1. *Findings of Fact*

Mother challenges findings of fact 8, 17–18, 21–22, 24–28, 30, 32–35, and 38. We decline to address most of these findings because Mother "failed to specifically argue in her brief that they were unsupported by the evidence." *In re P.M.*, 169 N.C. App. 423, 424 (2005) (citing N.C. R. App. P. 28(b)(6)). Instead, Mother advocates for findings that would adopt her testimony from the termination hearing, which the trial court found to lack credibility. *See In re R.H.*, 295 N.C. App. 494, 501 (2024).

But we do address Mother's challenges to findings of fact 21, 26, and 35 to the

extent they support the trial court's conclusion of her willful abandonment of Faye. *See T.N.H.*, 372 N.C. at 407. Mother argues that these findings fail to consider that Grandfather "generally did not answer her text messages" and "would not allow" her to send gifts to Faye. Mother asserts that the trial court failed to consider her testimony regarding Grandfather's hindrances of her efforts to communicate and send gifts to Faye in making the challenged findings. But as the factfinder in a termination proceeding, the trial court "is in the best position to determine the credibility of the witnesses before it and make findings of fact." *R.H.*, 295 N.C. App. at 501.

As discussed above, even though Mother argues these findings are unsupported by the evidence, she does not contend there is insufficient evidence to support them. Rather, she contends that the findings fail to consider her testimony that Grandfather prevented her from contacting and sending gifts to Faye. Mother's arguments lack merit because the trial court, after hearing Mother's testimony, determined her testimony that Grandfather blocked Mother from making calls and sending gifts uncredible. *R.H.*, 295 N.C. App. at 501.

In any event, clear, cogent, and convincing evidence supports these findings. *See E.H.P.*, 372 N.C. at 392. In support of finding 21, Grandfather testified that Mother visited Faye only once since he obtained custody of her in 2020. In her testimony, Mother conceded to visiting Faye "only once or twice" but argued that Grandfather blocked her phone number and refused to schedule visits around her

work schedule. Grandfather also testified that, while Mother had reached out to him about visiting Faye "more . . . recently since this proceeding began" in July 2023, he has maintained "since day one" that he would not allow her to visit unless she took the required hair-follicle drug test. Thus, evidence properly supports the trial court's finding of fact 21 that "Mother made no effort to visit with Faye from 2021 through 2023." (Quotation modified.)

In support of finding 26, Grandfather testified that Mother never sent Faye any birthday cards or Christmas presents. The later portion of finding 26 documents the trial court's disbelief of Mother's testimony that Grandfather blocked her from calling him; this is a valid finding. *See In re N.D.A.*, 373 N.C. 71, 75 (2019), *abrogated on other grounds by In Matter of G.C.*, 384 N.C. 62, 65 (2023) (holding that trial court must indicate its belief as to credibility of recited testimony for finding's validity). Thus, competent evidence properly supports the trial court's finding 26 that "Mother did not call Faye on her birthday, send cards or gifts for her birthday, or provide Christmas gifts for Faye." (Quotation modified.)

In support of finding 35, Grandfather testified that Mother never called or sent the child any gifts or cards, while Mother conceded that she last saw Faye on 13 November 2021. Because the relevant time period is January through July 2023, competent evidence properly supports the trial court's finding 35 that Mother "relinquished all parental claims for at least six consecutive months prior" to the petition. (Quotation modified.)

## 2. *Adjudication*

At the adjudication stage, the trial court concluded that there were grounds for terminating Mother's parental rights based on neglect, dependency, willful failure to make reasonable progress, and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(1)-(2), (6), (7). Mother claims that the trial court erred in finding each of these grounds for termination. Because a trial court "may terminate parental rights upon a finding of one or more" grounds for termination, *id.* § 7B-1111(a), we will affirm a termination order if the trial court "supports" any of the termination grounds "by findings of fact based on clear, cogent[,] and convincing evidence." *In re Moore*, 306 N.C. 394, 404 (1982). For the reasons below, we hold that the trial court properly found grounds for termination on willful abandonment. *See* N.C.G.S. § 7B-1111(a)(7).

We first address whether the trial court's findings of fact support its conclusion that Mother willfully abandoned Faye under N.C.G.S. § 7B-1111(a)(7). Under this statute, the trial court may terminate parental rights upon a finding that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." N.C.G.S. § 7B-1111(a)(7). Willful "[a]bandonment requires a willful intent to escape parental responsibility and conduct in effectuation of such intent," *Pratt v. Bishop*, 257 N.C. 486, 502 (1962), and "implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child," *E.H.P.*, 372 N.C. at 393 (quotation omitted). Our Supreme Court has held "that if a parent

withholds h[er] presence, h[er] love, h[er] care, the opportunity to display filial affection, and wil[l]fully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *Pratt*, 275 N.C. at 501.

Here, the trial court found that Mother made little to no effort to pursue a relationship with Faye in the six months preceding the filing of the termination petition, including that Mother (1) sent no birthday cards or Christmas gifts to Faye, (2) made no effort to visit her from 2021 through 2023, and (3) otherwise eschewed all parental duties and relinquished all parental claims from January to July 2023. These findings demonstrate that Mother willfully withheld her love, care, and affection from Faye in the six months preceding this petition. Accordingly, the trial court properly determined that grounds for termination existed on willful abandonment under N.C.G.S. § 7B-1111(a)(1). Because we hold that sufficient evidence supports termination under N.C.G.S. § 7B-1111(a)(7) and only one ground for termination is necessary to proceed to the disposition stage in a termination proceeding, we need not consider Mother's other arguments challenging the additional grounds for termination.

### 3. *Best-Interests Determination*

Having so held, we now turn to the trial court's conclusion that termination was in Faye's best interest. Mother argues that the trial court erred in determining that termination was in Faye's best interest because the trial court failed to "reference [her] age in its evaluation of [Faye's] best interest," and "the fact that Faye

is well-settled in . . . [Grandfather's] home does not alone support the conclusion that it is in her best interest to terminate [Mother's] parental rights." Upon its determination that at least one ground for termination exists under N.C.G.S. § 7B-1111(a), the trial court must "determine whether terminating the parent's rights is in the juvenile's best interest[s]" based on:

> (1) The age of the juvenile.
> (2) The likelihood of adoption of the juvenile.
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>      . . . .
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement . . . .

N.C.G.S. § 7B-1110(a). We review the trial court's "assessment of a juvenile's best interest at the dispositional stage only for abuse of discretion." *A.R.A.*, 373 N.C. at 199 (citation modified). Although the trial court must consider the child's age and likelihood of adoption, it need not make specific written findings of fact on these or any other listed factor. *See id.*

Here, the trial court supported its conclusion that termination was in Faye's best interest with findings regarding Faye's age, her likelihood of adoption, the termination's likelihood of aiding in achieving permanency for Faye, and the quality of her relationships with Mother and with Grandfather. In light of the trial court's findings and the record as a whole, the trial court's best-interests determination was well within its sound discretion. Therefore, the trial court did not err in concluding

that it was in Faye's best interest to terminate Mother's parental rights.

## IV.    Conclusion

For the reasons discussed above, this Court affirms the trial court's termination of Mother's parental rights to Faye.

AFFIRMED.

Judges COLLINS and FLOOD concur.

Report per Rule 30(e).