McGEE, Chief Judge.
Respondent-Father appeals from the trial court's order terminating his parental rights to his sons, J.H. and J.H., Jr. (at times, "the Juveniles"). We affirm the trial court's order.
I. Background
Robeson County Department of Social Services ("DSS") filed juvenile petitions on 23 July 2014 alleging that J.H. was an abused and neglected juvenile, and that J.H., Jr. was a neglected juvenile. The petitions arose from a report DSS received regarding severe burns J.H. sustained while in the care of his mother ("Mother"). J.H., who was two years old at the time, was transported to the hospital in Lumberton, North Carolina on 21 July 2014 with life-threatening burns. After "visually seeing the burn marks on J.H.," the hospital employee who examined J.H. determined that Mother's explanation of the incident-that J.H. had fallen into a tub of hot water and sustained third degree burns -"was not consistent with [J.H.'s] burn marks." J.H. was subsequently transferred to the UNC Burn Center due to the severity of his burns. It was later determined that J.H. was "intentionally burned by forced [immersion]."[1] DSS subsequently learned that Mother suffered from mental health issues and had been "in and out of mental hospitals and facilities."
Respondent-Father informed DSS he was unaware of the incident because he had just returned home from work. Respondent-Father further informed DSS that he had been living in Robeson County temporarily, did not have stable housing of his own, and was temporarily visiting his children with plans to return to New York. DSS filed petitions on 23 July 2014, alleging that J.H. was an abused and neglected juvenile, and J.H., Jr. was a neglected juvenile. DSS obtained non-secure custody of the Juveniles.
An adjudicatory hearing was held on 24 September 2014. In an order entered 16 December 2014, the trial court found as fact that:
[Mother] was under a lot of stress and had boiled several pots of hot water on the stove and poured them into the bath tub. It was learned that she then placed [J.H.] into the boiling water because she had told him several times to go to his room and he did not listen. It was learned that [Mother] took [J.H.] out of the tub and placed him on a towel on the floor. It was learned that [Mother] then ran a tub of cold water and placed [J.H.] back in the tub because she had seen blisters arising on [J.H.'s] feet. It was learned that [Mother] then took [J.H.] out of the tub and wrapped him in a towel. It was learned that [Mother] waited 30-45 minutes before calling 911. [J.H.] was then transported to Southeastern Health where he was later transported out to UNC Chapel Hill Burn Unit. [J.H.] stayed at the UNC Chapel Hill Burn Center from July 23, 2014 until September 11, 2014 and was later placed in a licensed foster home.
The trial court adjudicated J.H. an abused and neglected juvenile, and J.H., Jr. a neglected juvenile. Following a dispositional hearing, the court ordered that the permanent plan for the Juveniles be guardianship with a court-approved caretaker. The trial court terminated visitation on 24 September 2015, changed the permanent plan for the Juveniles to adoption, and authorized DSS to pursue termination of parental rights.
DSS filed petitions to terminate the parental rights of Mother and Respondent-Father on 28 October 2015. DSS alleged that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1)-(3) due to neglect, failure to make reasonable progress, and failure to pay support. DSS additionally alleged that J.H. and J.H., Jr. were dependent juveniles and grounds therefore existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) to terminate the parental rights of Mother and Respondent-Father.
After DSS was unable to locate Respondent-Father to serve him with notice, DSS served notice on Respondent-Father by publication that the termination hearing would be held on 24 February 2016. However, at a pre-trial hearing held 3 February 2016, a social worker informed the court that Respondent-Father had moved to a new address, and DSS had issued an alias and pluries summons prior to the 3 February 2016 hearing. At the 24 February 2016 hearing, Mother's attorney moved to continue the matter, and the court continued the matter until 30 March 2016. Mother requested another continuance at the 30 March 2016 hearing, and the court again continued the matter until 21 April 2016.
Despite being continued until 21 April 2016, the termination hearing was held a day early, on 20 April 2016. At that hearing, Mother's counsel again moved to continue the hearing, stating she was unable to get in contact with Mother to inform her of the change in the hearing date. Respondent-Father joined in the motion to continue. Respondent-Father's attorney explained she had been informed by DSS's attorney a week prior that they would be unable to proceed with the hearing as originally scheduled for 21 April 2016, and that she had told DSS's attorney that she "was not opposed" to having the hearing on 20 April 2016. Respondent-Father's counsel stated that she was joining Mother's request to continue the matter, however, because she had "not had any contact with [Respondent-Father] to know if he received" a letter she had sent attempting to inform him of the change of hearing date. The trial court denied the motion:
[A]t this late stage and all other things being equal it is the responsibility of the clients to keep up with their cases and lawyers making good faith effort to get in contact with the last known address and did (unintelligible) duty to keep their lawyer informed of any change of address and to do so is a burden upon the respondent. I'm going to find that this case has gone on for almost two years and that these children are in need of permanency in their lives, and the [c]ourt's going to find it's in their best interest that we move forward and will allow the State to proceed.
Pursuant to the grounds alleged in the petitions, the trial court entered an order on 9 June 2016 terminating the parental rights of Mother and Respondent-Father. Respondent-Father appeals.[2]
II. Analysis
Respondent-Father argues the trial court erred by: (1) denying his motion to continue the termination hearing, thereby depriving him of his due process rights; (2) entering findings of fact which were not supported by competent evidence; (3) concluding that grounds exited to terminate his parental rights; and (4) concluding that termination of Respondent-Father's parental rights would be in the best interests of the Juveniles.
A. Motion to Continue
Respondent-Father argues he was deprived of his due process rights when the trial court denied his motion to continue the termination hearing. We disagree. The standard for granting a motion to continue is set out in N.C. Gen. Stat. § 7B-803, which provides in relevant part:
The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.
N.C. Gen. Stat. § 7B-803 (2015). "A trial court's decision regarding a motion to continue is discretionary and will not be disturbed on appeal absent a showing of abuse of discretion. Continuances are generally disfavored, and the burden of demonstrating sufficient grounds for continuation is placed upon the party seeking the continuation." In re J.B. , 172 N.C. App. 1, 10, 616 S.E.2d 264, 270 (2005) (citations omitted). However, if the motion to continue raises a constitutional issue, then the court's ruling involves a question of law and is fully reviewable. State v. Jones , 342 N.C. 523, 530-31, 467 S.E.2d 12, 17 (1996) (citations omitted).
On appeal, Respondent-Father contends that the trial court's denial of his motion to continue violated his right to due process. While Respondent-Father's trial counsel joined Mother's motion to continue the case, the motion was not grounded in due process concerns. Therefore, this argument was waived due to Respondent-Father's failure to assert his due process argument in the trial court. See In re T.P. , 217 N.C. App. 181, 186, 718 S.E.2d 716, 719 (2011) (holding that the mother "waived review of this issue on appeal" because she "did not raise an objection at trial"). Furthermore, the record demonstrates that Respondent-Father received proper notice of the petitions to terminate his parental rights, and his trial counsel was personally notified of the change in hearing date and voiced no opposition. See In re T.M. , 182 N.C. App. 566, 572, 643 S.E.2d 471, 475-76, aff'd , 361 N.C. 683, 651 S.E.2d 884 (2007) ("the knowledge of an attorney is imputed to her client" (citation omitted)).
Respondent-Father was represented by counsel throughout the termination hearing proceedings. Although Respondent-Father argues that, had he been present at the hearing, he may have been able to testify or otherwise present evidence as to progress he may have made; this belated argument is entirely speculative. Moreover, Respondent-Father's lost opportunity was due to his failure to maintain contact with his counsel and with DSS. See In re Bishop , 92 N.C. App. 662, 666, 375 S.E.2d 676, 679 (1989) (noting that counsel made repeated efforts to contact the respondent but was unable to do so, that the respondent was uncooperative with counsel, and thus found "little merit in [the] respondent's contention that she had no notice of the hearing. Where the lack of preparation for trial is due to a party's own actions, the trial court does not err in denying a motion to continue.").
B. Challenged Findings of Fact
Respondent-Father specifically challenges finding of fact 53, and more broadly argues that there was no evidence regarding either Respondent-Father's ability to pay or the cost of care for J.H. and J.H., Jr. "On appeal, our standard of review for the termination of parental rights is whether the court's findings of fact are based upon clear, cogent and convincing evidence [.]" In re Baker , 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003) (citation and quotation marks omitted); see also In re Clark , 159 N.C. App. 75, 83, 582 S.E.2d 657, 662 (2003) ("An order terminating parental rights will be upheld if there is clear, cogent, and convincing evidence to support the findings of fact[.]"). This "standard is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery , 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984) (citation omitted).
Finding of fact 53, challenged by Respondent-Father, states: "[Respondent-Father] was gainfully employed and failed to provide any type of support for the care of his children. [Respondent-Father] did give the children a Christmas present in December, 2014." We hold there was adequate evidence presented at the termination hearing for the trial court to enter finding of fact 53. Amber Sealey ("Sealey"), a DSS social worker, testified that Respondent-Father was employed and had not paid any money to support the Juveniles prior to October 2015. Thus, we conclude the trial court's finding of fact 53 was supported by the record. See In re Whisnant , 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (It is the trial judge's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom.").
Respondent-Father also argues there was no evidence regarding his ability to pay child support. Respondent-Father, however, does not specifically challenge findings of fact 41 or 54, which found as fact that Respondent-Father was "ordered to pay child support," and that he was "under an order to pay child support." See In re Beasley , 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001) (stating that "[a] broadside exception that the trial court's conclusion of law is not supported by the evidence does not present for review the sufficiency of the evidence to support the entire body of the findings of fact.") (internal citation omitted). Assuming, arguendo , that Respondent-Father had properly preserved an objection to either of these findings, his arguments are focused on the fact that there was insufficient evidence regarding whether and how much support he was required to pay because the actual support order was not introduced into evidence. However, Sealey testified that Respondent-Father had been ordered to pay child support. While the better practice may have been for the support order to have been entered into evidence, Sealey's testimony was sufficient to establish the existence of the order. The existence of the support order logically supports a conclusion that Respondent-Father was required to pay some amount greater than zero, which likewise proves his ability to pay some portion of the cost of care for the Juveniles. See In re Becker , 111 N.C. App. 85, 94, 431 S.E.2d 820, 826 (1993) (finding that since the respondent-father entered into a voluntary support agreement, "DSS did not need to provide detailed evidence of his ability to pay support during the relevant time period").
Respondent-Father argues that no evidence was presented regarding the cost of care for the Juveniles, and contends that finding of fact 58 is either unsupported by competent evidence or is more properly labeled as a conclusion of law. Finding of fact 58 states: "[M]other ... and [Respondent-Father] have willfully failed to pay a reasonable portion of the cost of care for [J.H. and J.H., Jr.] although physically and financially able to do so." We hold that clear, cogent, and convincing evidence supports finding of fact 58. At the termination hearing, Sealy testified Respondent-Father "worked the majority of the time" she was involved in the case and that, while he did give a Christmas gift to the children one year, "that's about the extent of any kind of contribution" from Respondent-Father. Sealy further testified that Respondent-Father did not "make any payments monetarily towards the use and benefit of [J.H. and J.H., Jr.] outside of the one Christmas gift[.]" This testimony serves as "clear, cogent, and convincing evidence" to support the trial court's finding of fact 58. Whisnant , 71 N.C. App. at 441, 322 S.E.2d at 435.
The trial court's findings establish that: (1) Respondent-Father was employed; (2) there was a child support order in place; and (3) Respondent-Father failed to pay any support for the Juveniles prior to the filing of the petitions to terminate his parental rights. The trial court's findings support its conclusion that Respondent-Father failed to pay a reasonable portion for the cost of care of the Juveniles in the six months preceding the filing of the petitions.
C. Grounds for Termination
Respondent-Father argues the trial court erred by concluding that grounds existed to terminate his parental rights. We disagree. N.C. Gen. Stat. § 7B-1111 provides the statutory grounds for the termination of parental rights. A finding of any one of the separately enumerated grounds is sufficient to support termination. See In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., D.M.S., S.J.D., J.M.D. , 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citation omitted). We review the trial court's conclusions of law de novo. In re S.N., X.Z. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), aff'd per curiam , 363 N.C. 368, 677 S.E.2d 455 (2009).
In the present case, the trial court concluded that grounds existed to terminate Respondent-Father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(3). Under N.C.G.S. § 7B-1111(a)(3), the trial court may terminate parental rights upon a finding that
[t]he juvenile has been placed in the custody of a county department of social services ... and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
N.C. Gen. Stat. § 7B-1111(a)(3) (2015). "[N]onpayment constitutes a failure to pay a reasonable portion if and only if respondent is able to pay some amount greater than zero." In re Clark , 151 N.C. App. 286, 289, 565 S.E.2d 245, 247 (citation omitted).
In support of its conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) to terminate Respondent-Father's parental rights in the present case, the trial court found as fact:
41. On October 28, 2015, Social Worker Amber Sealey made telephone contact with Child Support Worker, Lisa Harris. Ms. Harris states that [Respondent-Father] is ordered to pay child support.
....
53. [Respondent-Father] was gainfully employed and failed to provide any type of support for the care of his children.
....
54. [Respondent-Father] is currently under an order to pay child support.
We are bound by those findings not challenged by Respondent-Father on appeal, and those findings that, although challenged, we find to be supported by competent evidence in the record. See Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Accordingly, we hold that the trial court did not err in concluding that grounds existed to terminate Respondent-Father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(3).[3]
D. Best Interests of the Child Determination
Respondent-Father argues the trial court abused its discretion when it determined that termination of his parental rights was in the best interests of the Juveniles. We disagree.
After an adjudication that one or more grounds for terminating a parent's rights exist, the trial court must determine whether terminating the parent's rights is in the juvenile's best interests by considering the following criteria:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2015). This Court reviews the trial court's best interests determination for abuse of discretion. In re Anderson , 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Roache , 358 N.C. 243, 284, 595 S.E.2d 381, 408 (2004).
In the present case, at disposition, the trial court made the following findings of fact:
3. The minor children have been in the care of [DSS] since July 23, 201[4].
4. At the time the children came into care, [J.H.] was two years old, and [J.H., Jr.] was eight months old.
5. At the present time, [J.H.] is three years old and [J.H., Jr.] is two years old.
6. [J.H.] has lived in his current foster home placement since September 11, 2014 and [J.H., Jr.] has lived in his current foster home placement since March 3, 2015. Both children are in the same foster home placement.
7. The children are doing well in their placement.
8. The permanent plan for these children is adoption.
9. Based on the foregoing, the likelihood of adoption is extremely high.
We review dispositional findings only to determine if they "are supported by competent evidence," in which case "they are conclusive on appeal." In re Weiler , 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003) (citations omitted).
Respondent-Father challenges finding of fact number 9, and argues that the Juveniles will be difficult to adopt, specifically citing J.H.'s medical issues, which Respondent-Father contends will make J.H. difficult to place. At the dispositional hearing, however, Chandra McKoy ("McKoy"), an adoption social worker with DSS, testified that the Juveniles' foster mother indicated that, if no other adoptive parent would "step up," she would consider adopting the Juveniles. McKoy further testified that the Juveniles were bonded to the foster mother. This evidence was competent, and the trial court was in the best position to weigh this evidence and determine the likelihood of adoption. See Phelps v. Phelps , 337 N.C. 344, 357, 446 S.E.2d 17, 25 (1994) ("[I]t is not for an appellate court to determine de novo the weight and credibility to be given to evidence disclosed by the record on appeal." (citation omitted)). Even if the court's finding that the likelihood of adoption was "extremely" high was overstated, it is clear from the record that there was some likelihood of adoption. The Juveniles were bonded to the potential adoptive mother, and termination of Respondent-Father's parental rights would aid in the permanent plan of adoption. Furthermore, even if we were to strike this finding, this Court has held that "the absence of an adoptive placement for a juvenile at the time of the termination hearing is not a bar to terminating parental rights." In re D.H., D.H., K.H. , 232 N.C. App. 217, 223, 753 S.E.2d 732, 736 (2014) (citation omitted).
The trial court's findings demonstrate that it considered the statutory factors set forth in N.C. Gen. Stat. § 7B-1110(a), and we cannot say the trial court's ultimate conclusion is manifestly unsupported by reason. We therefore hold the trial court did not abuse its discretion when it concluded that it was in the Juveniles' best interests to terminate Respondent-Father's parental rights.
III. Conclusion
We affirm the trial court's order terminating Respondent-Father's parental rights.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and McCULLOUGH concur.

Mother was later charged with, and pleaded guilty to, felony child abuse for the incident.

Mother, who has not challenged the trial court's order, is not a party to this appeal.

Respondent-Father additionally argues that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2) to terminate his parental rights. However, because we conclude that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) to support the trial court's order, we need not address the remaining grounds found by the trial court to support termination. Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34.